# IN THE COURT OF APPEALS OF IOWA

No. 21-1514
Filed January 12, 2022


**IN THE INTEREST OF B.S.,**
**Minor Child,**

**T.B.F., Mother,**
Appellant,

**B.S., Father,**
Appellant.

_____


Appeal from the Iowa District Court for Polk County, Lynn Poschner, District

Associate Judge.


Both parents separately appeal the termination of their parental rights to

their child. **AFFIRMED ON BOTH APPEALS.**


Clarissa Argueta, Des Moines, for appellant mother.

Jamie J. Dawdy, Flanagan Law Group, PLLC, Des Moines, for appellant

father.

Erin Romar, Youth Law Center, Des Moines, attorney and guardian ad litem

for minor child.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee.


Considered by Bower, C.J., and Greer and Badding, JJ.

**GREER, Judge.**

In a joint order entered in October 2021, the juvenile court terminated the parental rights of the father, B.S., and the mother, T.B.F., to their child, born in August 2020.[1]  Each parent separately appeals the termination order.  On the father's appeal, he contests the finding that the child could not be returned to his care at the time of the termination hearing.  He also contends it is not in the child's best interests to terminate his rights and, as an alternative, requests a six-month extension to demonstrate his ability to meet the child's needs.  Similar to the father's approach, the mother concedes all required grounds for termination but for the last—disputing the child could not be returned to her at the time of the termination hearing.  She predicts her planned plea arrangement over her recent criminal matter "could mean incarceration for only six months."  Thus, she could be available after that time frame.  Like the father, she asserts it is not in the child's best interests to terminate her parental rights and the juvenile court erred by not granting her a six-month extension to establish a safe home for the child.  We review the family history and then tackle the contentions of each parent's appeal.

**Family Background and Prior Proceedings.**

When the child was six months of age, the Iowa Department of Human Services (DHS) became involved and removed the child from the care of his mother after police pulled her over and found stolen handguns, illegal drugs, and the child in the vehicle.  Out of this encounter, the police arrested the mother for possession of a weapon as a felon, trafficking in stolen weapons, possession of

---

[1] At the time of the termination hearing in September 2021, the mother was in federal custody.  The father was incarcerated in an Iowa correctional facility.

marijuana, and child endangerment. Allegations of abuse by the mother were founded from this incident and because the father was also incarcerated at the time, DHS removed the child in February 2021, initially placing the child with the maternal grandparents. For a more long-term option, the child was placed with a couple who were friends of the maternal grandmother.[2] An investigation led to an adjudication of the child as a child in need of assistance (CINA). After the mother's February arrest, she was released briefly in April, but was again in jail on federal criminal charges from May forward. The father spent the entire tenure of this case incarcerated. The child never returned to the care of either parent after his February removal.

The permanency hearing was held and resulted in the court directing the county attorney to initiate termination proceedings. That trial occurred in September. The juvenile court terminated the rights of both parents to their child, relying on paragraph (h) of Iowa Code section 232.116(1) (2021).[3]

---

[2] The family friends became licensed foster parents and DHS identified them as a willing adoptive family for the child. There was also consideration of an out-of-state relative, who at one point was interested in providing care.

[3] Iowa Code 232.116(1)(h) requires proof of all of the following conditions:
(1) The child is three years of age or younger.
(2) The child has been adjudicated a [CINA] pursuant to section 232.96.
(3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

**Analysis.**

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). We look to see if there is clear and convincing evidence of the grounds for termination of the parent's rights. *Id.* at 523. Our review follows a three-step process: (1) we first determine if any ground for termination under section 232.116(1) has been established; (2) if we find that a ground for termination has been established, we next examine if the best-interest framework, under section 232.116(2), supports termination of parental rights; and (3) finally, if we do find that the statutory best-interest framework supports the termination of parental rights, we consider if any section 232.116(3) exceptions apply to preclude termination of the parental rights. *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Here, on the last step, no one raised an exception to the termination.

**Grounds for termination.**

*Mother's and Father's Challenge:*

Because the grounds-for-termination challenge of each parent is similar, we address this issue under one heading. Each parent challenges the juvenile court's conclusion that the child could not be returned to either parent's care at the present time. See *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (noting that "present time" means at the time of the termination hearing). We begin with the statute. The Iowa legislature built a tempered patience into the statutory scheme of Iowa Code chapter 232 when dealing with termination cases *See In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). With a child age three years or younger, but for other circumstances, that patience is afforded a six-month limitation and after that point, "termination proceedings must be viewed with a sense of urgency." *Id.* at 494–95.

While both parents have admirable goals concerning how their futures might look, because of choices made, each parent was incarcerated at the time of the termination hearing with only speculation about a release date. To put it more simply, neither parent is in a position to assume care of the child at the present time. *See In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (holding that custody could not be returned at the time of the termination hearing because, even with notice of release on parole, the incarcerated mother had much to prove to resume care and the "journey is likely a long one and it is far from complete"); *see also In re Z.P.*, 948 N.W.2d 518, 524 (Iowa 2020) (reaffirming termination is appropriate under paragraph (h) when "the record shows a number of reasons why [the parent] was not prepared to assume a parenting role *at the time of trial*" (emphasis added)). Such is the case for both parents here. And the juvenile court pointed to the parents' continued inability to avoid criminal behavior and the lack of demonstrated parenting skills. All of these considerations provided sufficient evidence supporting the parents' inability to resume care of the child at the present time and establishing grounds for termination under section 232.116(1)(h) for both parents.

**Best Interests.**

*Both Parents' Claim.*

Each parent argues that the best interests of the child prohibited termination of their respective parental rights. Here our focus is "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). On these considerations, we find the parents share several factors that relate to their child's best interests. The parents' track record in life

created the reality they now face. As noted, both were incarcerated during the termination trial. In the past, neither parent demonstrated any sustained level of behavior that translated into a stable and safe situation for the child. Both parents have a long string of criminal convictions. Both reported previous use of illegal substances but deny current problems with substance abuse. And because of their incarceration status, DHS never observed physical interactions between the child and either parent. Finally the child has not been in the care of either parent since February 2021. *See In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (observing that the past performance of a parent allows insight into how termination might best meet a child's long-range best interests). The father points to his progress in prison, but he was not approved for visits with the child because he failed to address other child endangerment charges. Still, the past performance of the mother and father does not instill confidence that either can meet the critical needs of the child, which is our focus on the best interests of the child over the long-term.

Finally, both parents argue that placement in a foster home is not a permanent placement and claim it is not in the child's best interests to remain there. They miss the point. The foster care placement here offers a road to a permanent home because the foster parents were family friends, expressed a willingness to adopt, and reflected an interest in maintaining family ties for the child. We find the best interests of the child support termination of the parental rights of both the mother and father.

**Extension of Time.**

Each parent requested a six-month extension to seek a reprieve from the termination process. Each framed a future that would allow the child to live with

him or her.  Here, the statute directs the juvenile court to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."  Iowa Code § 232.104(2)(b).  At the termination trial, the mother requested a six-month extension but followed that request with an acknowledgement that in six more months "[i]t is possible that I could be off in prison."  Likewise, the father testified he also wanted a six-month extension, but when asked if about his incarceration status in the next six months, he admitted, "I can't answer that."[4]  The juvenile court made no mention of an extension in the termination order but offered this analysis during the September 2021 hearing:

> In order to grant the up to six-month extension, I have to be able to find that it's reasonably likely that the issues that caused removal will be rectified or taken care of during that six months and [the child] would return home.
> And given what—given the circumstances as they are today and the evidence that I have in front of me, I'm not able to make that finding.

So, to address the separate appellate arguments of each parent over their requests for an extension of time, we examine each situation separately.

*The Mother.*

On a short release from prison during this case, the mother contends she readied herself to accept care of her child, meaning that upon release from prison she could offer safe and stable parenting.  True, she "applied for housing, applied for a bus pass, voiced her desire to attend parenting classes, found a job, took a

---

[4] The father later said that there was an 85% chance he would be granted parole.

clean UA, and participat[ed] in substance and mental health evaluations." Yet all this progress was negated as she found herself back in prison at the time of the termination hearing. Even now, she can only estimate that her plea deal might result in a further six to eighteen months of incarceration. It is unlikely another six months would result in resumption of care of the child by the mother.

*The Father.*

The father's main argument centers around his belief that he may soon be released on parole to a "three-quarter house" where he would reside for sixty-days and then have assistance finding housing and a job. He argues granting a six-month extension to termination would afford him the opportunity to prove his parenting ability while on parole. Demonstrating his motivation, while incarcerated, the father participated in parenting classes, a life skills course, completed the Thinking for Change Program, and attended substance-abuse treatment. He contends that if granted parole, he would be instantly available to care for the child. But this assertion comes with the condition that he actually is granted parole and a promise that lacks the guarantee of historical performance. While the father has great intentions, in the child's lifetime, the father has yet to provide any direct child care. Thus, it is naive to assume he could provide safe and stable care within a six-month time frame.

The juvenile court summed up parents' concerning history:

[Mother] and [father] are both incarcerated. It is unknown how much longer they will be incarcerated. Moreover, it is unknown if they will be able to demonstrate a safe and stable lifestyle when they are released. [Mother] was already on probation and had already been convicted of a felony when she was charged with the currently pending federal criminal charges. [Father] has been to prison twice. In other words, both parents have been faced with serious criminal

charges and consequences in the past and within a short period of time continued with criminal behavior.

In sum, this child has spent more than half of his life outside the care of his mother and has never been in the care of his father. With the best interests of the child in the forefront, termination of the parental rights of both parents offers the child the opportunity to have a stable, loving, and secure home. The time has come for that outcome. *See In re J.E.*, 907 N.W.2d 544, 547 (Iowa Ct. App. 2017) (holding it was not in child's best interests to wait for permanency while her incarcerated father struggled "to get his own life together").

On our de novo review, we affirm the juvenile court's termination of the parental rights of the mother and father.

**AFFIRMED ON BOTH APPEALS.**